IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| JANE LEWIS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:14cv316-MHT |
| | ) | (WO) |
| BLUE CROSS BLUE SHIELD | ) | |
| OF GEORGIA d/b/a Greater | ) | |
| Georgia Life Insurance | ) | |
| Company, and ESG | ) | |
| OPERATIONS, INC., | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION AND ORDER

Plaintiff Jane Lewis filed this lawsuit in an
Alabama state court asserting state-law claims of
negligent, wanton, and fraudulent misrepresentation and
suppression against the following two defendants: Blue
Cross Blue Shield of Georgia d/b/a Greater Georgia Life
Insurance Company and ESG Operations, Inc.  Greater
Georgia Life, with the consent of ESG, removed the case
to this court under 28 U.S.C. § 1441, asserting that
Lewis's claims are 'completely preempted' by the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and thus the court has jurisdiction under 28 U.S.C. § 1331. The case is currently before the court on Lewis's motion to remand and Greater Georgia Life and ESG's motion to dismiss. The remand motion will be denied, and the dismissal motion will be granted, albeit with leave to restate a claim under ERISA.

## I. LEGAL STANDARDS

The party seeking removal has the burden of establishing federal jurisdiction. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996), cert. denied, 520 U.S. 1162 (1997). Removal statutes should be construed narrowly, and all doubts about removal should be resolved in favor of remand. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003). A defendant may submit affidavits, depositions, or other evidence to support removal. Hardy v. Welch, 135 F. Supp. 2d 1171, 1177 (M.D. Ala. 2000) (Thompson, J.).

A lawsuit filed in state court may be removed by a defendant where the district court would have had original jurisdiction. 28 U.S.C. § 1441. A court has original federal-question jurisdiction if a federal issue is apparent on the face of the plaintiff's complaint. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). Under this well-pleaded complaint rule, "a defense that raises a federal question is inadequate to confer federal jurisdiction." Id. There is, however, an exception to the well-pleaded complaint rule in cases where Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Jones v. LMR Intern., Inc., 457 F.3d 1174, 1178 (11th Cir. 2006).

Should the court find Lewis's claim is completely preempted by federal law and, thus, remand inappropriate, the court will also address Greater

3

Georgia Life's motion to dismiss.  In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007), but rather "only enough facts to state a claim to relief that is plausible on its face."  <u>Id</u>. at 574.

## II.  BACKGROUND

This case arises out of Greater Georgia Life's denial of Lewis's life insurance claim following the death of her late husband.  ESG, a Georgia-based

**4**

company, contracts with municipalities to manage their utility and public works operations.  ESG employed Lewis for over year.  During her employment, Lewis and her husband were covered under a "Basic Group Term Life, Basic Accidental Death & Dismemberment and Optional Group Term Life Insurance" policy issued by Greater Georgia Life.  The insurance company issued the policy as part of a group plan with ESG as plan sponsor.

When Lewis decided to leave her employment with ESG, she contacted an ESG human resources employee to discuss her policy with Greater Georgia Life.  The human resources employee represented to Lewis that she could take her policy with her and that, by paying the insurance premiums herself, the policies would stay in full force and effect.  Lewis then contacted Greater Georgia Life to confirm that she would be allowed to pay her insurance premiums personally and retain coverage.  Based on these conversation, Lewis provided

the insurance company with her personal mailing address and set up payment arrangements.

Lewis paid the policy's premiums from 2007 through 2012. In December of 2012, her husband had a stroke. Following her husband's hospitalization, Lewis notified Greater Georgia Life of a possible claim for benefits under her policy. The insurance company, in turn, represented to Lewis that the policy was in full force and effect and that all necessary premiums had been paid through February 2013. However, in January 2013, the insurance company contacted Lewis and informed her that her policy had been cancelled and all coverage was terminated.

Lewis's husband died on May 18, 2013, and Lewis made a claim for benefits under her policy. Greater Georgia Life denied Lewis's claim, again informing her that the policy had been cancelled and all coverage terminated. Upon receipt of the insurance company's denial, Lewis filed suit in an Alabama state court,

initially asserting breach of contract; later, she
amended her complaint to assert negligent, wanton, and
fraudulent misrepresentation and suppression on the
part of Greater Georgia Life and ESG.  The insurance
company removed the action to this court on April 30,
2014.

### III.  DISCUSSION

### A.  Motion to Remand

The resolution of Lewis's motion to remand turns on
the timeliness of Greater Georgia Life's notice of
removal and the proper characterization of Lewis's life
insurance policy.  Lewis puts forth three arguments in
favor of remand: (1) the insurance policy is not
governed by ERISA because it was neither established
nor maintained by Lewis's employer or an employee
organization on her employer's behalf; (2) the
insurance policy is statutorily exempt from ERISA
coverage as ESG exists solely to act as a governmental

instrumentality performing governmental functions for the City of Opelika; and (3) Greater Georgia Life's notice of removal was not timely pursuant to 28 U.S.C. § 1446. The insurance company disputes Lewis's contentions and maintains that her policy is properly characterized as an employee benefit plan, and, accordingly, Lewis's state-law claims are completely preempted by ERISA and subject to federal jurisdiction.

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). Federal preemption based on ERISA may take one of two forms: 'defensive' preemption and 'complete preemption.' Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211 (11th Cir. 1999); Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1329 (11th Cir. 1998). Because Lewis asserts only state-law claims, Greater Georgia Life is asserting 'complete preemption' as the basis for removal.

8

The Eleventh Circuit has adopted a two-part test to determine whether ERISA completely preempts a state-law claim: "(1) whether the plaintiff could have brought its claim under [ERISA] § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1345 (11th Cir. 2009) (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004)). If an ERISA claim is completely preempted, "state law claims that seek relief available under ERISA are recharacterized as ERISA claims" for the purpose of jurisdiction and, thus, "arise under federal law." LMR, 457 F.3d at 1178. Lewis's claims meet both prongs of the test.

### 1.  Prong One: Whether Lewis Could Have Brought Her Claims Under § 502(d)

Lewis could have brought her claims under ERISA, despite her arguments to the alternative. ERISA § 502(a) states that a participant or beneficiary of an

employee insurance plan may bring an action to recover benefits or to enforce her rights under an employee benefit welfare plan.   29 U.S.C. § 1132(a).   Lewis agrees that her policy, when first purchased, was part of a group employee benefit plan.   However, she contends that, when she left her employment with ESG, requested portability of her policy, and began making premium payments personally, her policy ceased to be part of ESG's sponsored group employee benefit plan.

The Eleventh Circuit addressed a situation similar to Lewis's in Glass v. United Omaha Life Insurance Co. 33 F.3d 1341 (11th Cir. 1944).   The Glass court held that 'conversion' of a group plan into an individual plan did not defeat ERISA coverage.   Id. at 1346-47. While that holding has been narrowed by this court in situations where an employer opts to terminate its relationship with the insurer, see McDonald v. Professional Ins. Corp., 946 F. Supp. 943, 945 (M.D. Ala. 1996) (Thompson, J.), Lewis's claim follows the

10

basic course of conversion by way of his an employee portability request and, as such, remains properly under the scope of ERISA.  See Glass, 33 F.3d at 1346-47 (affirming the district court's summary judgment in favor of defendant insurer in part because the insured's ability to convert his life insurance policy following termination of employment arose from the initial group plan, "and the converted policy itself continued to be integrally linked with the ERISA plan"); see also Griggers v. Equitable Life Assurance Soc'y of the U.S., 343 F. Supp. 2d 1190, 1195 (N.D. Ga. 2004) (Duffy, J.) (denying plaintiff leave to litigate her claims under state law after holding that the insurance policy at issue originated under a group plan and was a continuation of the ERISA-covered plan despite plaintiff having "resigned her employment and assumed responsibility for paying the premium").

Additionally, despite Lewis's argument to the contrary, ESG's work with the City of Opelika does not

convert its sponsored group plan into a 'governmental plan' exempt from ERISA under 29 U.S.C. § 1003(b)(1). "Even if a plan qualifies as an employee benefit plan under ERISA, the plan can nevertheless evade ERISA's broad coverage if it is statutorily exempt." <u>Dickerson v. Alexander Hamilton Life Ins. Co. of Am.</u>, 130 F. Supp. 2d 1271, 1274 (N.D. Ala. 2001) (Nelson, J.). Five categories of employee benefit plans are statutorily exempt from ERISA's scope: (1) governmental plans; (2) church plans; (3) plans maintained solely for complying with workmen's compensation laws, unemployment compensation laws, or disability insurance laws; (4) plans maintained outside of the United States primarily for the benefit of nonresident aliens; and (5) unfunded, excess benefit plans.     29 U.S.C. § 1003(b). A 'governmental plan' is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any

agency or instrumentality of the foregoing." 29 U.S.C. § 1002(32). Lewis maintains that ESG qualifies as an 'instrumentality' of the City of Opelika, and, therefore, her plan is a statutorily exempt governmental plan.

ERISA does not define the term 'instrumentality.' As a result, when charged with determining whether an entity qualifies as an 'instrumentality', courts have commonly turned to provisions of the Internal Revenue Code. See Dickerson, 130 F. Supp. 2d at 1274-75; Culpepper v. Protective Life Ins. Co., 938 F. Supp. 794, 798 (M.D. Ala 1996) (Albritton, J.) (citing Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 918 (2nd Cir. 1987)). The Internal Revenue Code is an apt source for guidance as its definition of 'governmental plan' is nearly identical to ERISA's, and the IRS has issued a Revenue Ruling to accompany the definition that provides a six-factor analysis for "determining whether an entity is a governmental agency or

instrumentality." <u>Brown v. Reliance Standard Life Ins.</u> <u>Co.</u>, No. 2:13-CV-00261-RDP, 2014 WL 4681522, at *4 (N.D. Ala. Sept. 16, 2014) (Proctor, J.).  The Revenue Ruling instructs the court to consider:

> "whether it is used for a governmental purpose and performs a governmental function;
>
>> (1) whether performance of its function is on behalf of a state or political subdivision;
>> (2) whether there are private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner;
>> (3) whether control and supervision of the organization is vested in a public authority;
>> (4) if express or implied statutory or other authority is necessary for the creation or use of such an instrumentality, and whether such authority exists; and
>> (5) the degree of financial autonomy and the source of its operating expenses."

Rev. Rul. 57—128, 1957-1 C.B.311.

In evaluating ESG in light of these factors, the court finds that ESG does not qualify as an instrumentality of the City of Opelika.  While it

14

appears at first blush that two of the IRS factors
(governmental purpose and function) appear to weigh in
favor of construing ESG as an instrumentality of the
city, the court finds that ESG, in managing the city's
water and public works operations, functions as an
independent contractor for the city.  This is evident
when considering three of the remaining IRS factors.

First, ESG is a private company, headquartered in
Macon, Georgia.  The City of Opelika does not possess
an ownership stake in ESG.  Second, ESG is not
supervised or controlled by the City of Opelika.
Rather, it manages the city's water and public works
operations in accordance with a public-private
agreement--similar to the agreements it has entered
into with various municipalities across the southeast.
Third, ESG enjoys a largely unfettered degree of
autonomy.  Aside from receiving compensation from the
city for services rendered, ESG is not funded by the
city, the city is not responsible for the debts or

obligations of ESG, and ESG is not in a position to directly levy taxes upon the city's residents.

In applying the IRS factors to determine ultimately that an Alabama healthcare authority was not an instrumentality of the State, the court in <u>Brown</u> explained the importance of financial autonomy, noting the following:

> "[The authority's] lack of outside funding, in combination with its inability to levy taxes, removes from the equation one of the primary factors that drove Congress's exemption of 'governmental plans' from ERISA. Indeed, despite ERISA's regulatory and remedial sweep, Congress did not include public or governmental plans within its reach, believing in part, state and local governments' ability to tax would enable them to operate employee welfare benefit systems that would avoid the pitfalls of underfunding."

2014 WL 4681522 at *6 (internal quotations and emphasis omitted). Based on ESG's financial autonomy, private ownership, and private control, the court concludes that it does not qualify as an 'instrumentality' of the

16

City of Opelika under § 1003(b)(1).  Accordingly, Lewis
could have brought an action for denial of benefits
under § 502(a), in lieu of her state-law claims.


## 2.  Prong Two: Whether No Other Legal Duty Supports

### Lewis's Claims

The theories upon which Lewis bases her claims
"d[o] not arise independently" from her ERISA plan.
Connecticut State Dental Ass'n v. Anthem Health Plans,
Inc., 591 F.3d 1337, 1346 (11th Cir. 2009).  There is
no independent legal duty in an ERISA case if
"interpretation of the terms of [the] benefit plan[]
forms an essential part" of the legal claim.  Aetna
Health Inc. v. Davila, 542 U.S. 200, 213 (2004).  Here,
Lewis argues that Greater Georgia Life failed to pay
her benefits under her life insurance policy after
falsely informing her that her policy had been
cancelled.  To determine the merits of Lewis's legal
claims, the court would have to understand the terms of

17

the "Basic Group Term Life, Basic Accidental Death & Dismemberment and Optional Group Term Life Insurance" policy, specifically with regards to her coverage under the policy's portability provision. In other words, the foundation of her claims would be the court's interpretation of the plan. As such, no other independent legal duty supports her claims.

Because Lewis could have brought her legal claims under § 502(a) and did not have an independent basis for the claims, they are completely preempted by federal law. Therefore, the claims arise under federal law, and the court has proper federal-question jurisdiction.

### 3. Timeliness of Greater Georgia's Notice of Removal

Lewis finally argues that her claims are due to be remanded to state court because Greater Georgia Life's notice of removal was not timely pursuant to 28 U.S.C.

18

§ 1446.   A petition for removal must be filed within 30 days after defendant's receipt of the initial pleading setting forth the claim for relief.   28 U.S.C. § 1446(b)(1).   However, "if a case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant ... Of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446 (b)(3).

The crucial question is when did Greater Georgia Life first receive a "paper" from which it could have "ascertained" that an ERISA-governed plan was at issue, and thus, that the case was removable.   See Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003) (Albritton, C.J.); see also Naef v. Masonite Corp., 923 F. Supp. 1504, 1511 (S.D. Ala. 1996) (Howard, J.) ("When the initial pleading fails to provide at least a clue that the action is removable

19

... The thirty day time limit for notice of removal begins at the point when the defendant could have intelligently ascertained that the action was removable."). Removability can be ascertained from either formal or informal papers. Clingan, 244 F. Supp. 2d at 1302 (citing Webster v. Dow United Techs. Composite Prods., Inc., 925 F. Supp. 727, 729 (M.D. Ala. 1996) (Albritton, J.)). It is Greater Georgia Life's burden to prove "exactly when the thirty day time limit of 28 U.S.C. § 1446(b) began to run." Id. at 1302.

Greater Georgia Life contends that it was first intelligently able to ascertain that the case was removable on March 31, 2014, when Lewis filed her second amended complaint and responses to Greater Georgia Life's discovery requests. In those filings, Lewis identified ESG for the first time as her former employer through which she established the life insurance policy at issue. Her initial complaint and

20

first amended complaint represent that she had purchased the life insurance policy directly from Greater Georgia Life and did not provide any identifying information regarding the policy.

In response to Lewis's initial complaint and first amended complaint, Greater Georgia Life indicated on three separate occasions that it was unable to respond substantively to her complaint due to a lack of information "regarding the identity of the plaintiff and the decedent" in the preceding complaints. Thus, for Greater Georgia Life to remove this matter prior to Lewis's March 31 state-court filings, it would have had to guess as to removability, which is something courts have routinely held litigants should not be required to do. See, e.g., Webb v. Home Depot, USA, Inc., No. Civ.A. 00-A-220-N, 2000 WL 351992, at *3 (M.D. Ala. Mar. 27, 2000) (Albritton, C.J.).

The first date upon which Greater Georgia Life had enough information to "ascertain" that this case was

removable was March 31, when Lewis filed her second
amended complaint and responses to the insurance
company's discovery requests. Thus, removal on April
30, 2014, was within the statutory 30-day period, and
Lewis's motion to remand should be denied.


### B.  Motion to Dismiss

The court now turns to Greater Georgia life's
motion to dismiss. The insurance company first argues
that Lewis's complaint should be dismissed because
ERISA preempts her state-law claims. Defensive
preemption is a separate inquiry from complete
preemption. (Although they are separate inquiries,
courts have recognized that "[c]omplete preemption is
narrower than defensive preemption." Connecticut State
Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d
1337, 1343 (11th Cir. 2009) (internal quotation marks
omitted). In other words, if a state-law claim is
completely preempted under the narrower test, it will

likely also be preempted under the broader defensive preemption test.)

"Unlike complete preemption, which is jurisdictional, defensive preemption is a substantive defense, justifying dismissal of preempted state law claims." Jones v. LMR Intern., Inc., 457 F.3d 1174, 1179 (11th Cir. 2006). ERISA preempts "any and all State" law claims if the claim relates to an ERISA plan. 29 U.S.C. § 1144(a).

The question of whether a state-law claim relates to an ERISA plan is one of Congressional intent. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95 (1983). In enacting ERISA, Congress did not simply intend to counteract state laws meant to affect employee benefit plans, but instead created a broad preemption for any law that "has connection with or reference to such a plan." Id. at 97; LMR, 457 F.3d at 1179-80. Under this broad standard, courts have regularly dismissed fraudulent misrepresentation and suppression claims

based on an employer's or provider's failure to pay a under a policy.  _See, e.g._, _LMR_, 457 F.3d at 1180 (dismissing as preempted under ERISA state-law breach of contract, unjust enrichment, and fraud claims against employer who failed to fund the benefits plan); _Kirkland v. SSL Americas, Inc._, 263 F. Supp. 2d 1326 (M.D. Ala. 2003) (Albritton, C.J.) (dismissing as preempted under ERISA state law breach-of-contract, fraud-by-suppression, unjust-enrichment, fraud, deceit, and conversion claims against employer that denied employees claims under a severance plan).

Lewis alleges that Greater Georgia Life and ESG negligently, wantonly, and fraudulently made misrepresentations and suppressed facts concerning her life-insurance policy.  These claims not only refer to the plan previously determined to be an ERISA-covered employee benefit plan, but are based entirely on the plan.  They are classic examples of state-law claims

that relate to an ERISA plan and are thus preempted under federal law.

Because Lewis's only claims are state-law claims, they are both preempted under ERISA. The court, however, declines to dismiss Lewis's complaint at this time and will, instead, afford Lewis two weeks to amend her complaint to plead her claims under ERISA.

***

For the foregoing reasons, it is ORDERED as follows:

(1) Plaintiff Jane Lewis's motion to remand (doc. no. 9) is denied.

(2) Defendants Blue Cross Blue Shield of Georgia (d/b/a Greater Georgia Life Insurance Company) and ESG Operations, Inc.'s motion to dismiss (doc. no. 3) is granted to the extent that plaintiff Lewis has 14 days from this date to file an amended complaint that sets forth the claim under ERISA. Should plaintiff Lewis

fail to amend within the time allotted, the court will dismiss plaintiff Lewis's complaint with prejudice.

This case is not closed.

DONE, this the 31st day of March, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE